THE STATE, THE ELECTRIC STORAGE BATTERY COMPANY, PROSECUTOR, v. THE STATE BOARD OF ASSESSORS OF NEW JERSEY ET AL.

1. Manufacturing corporations organized under the General Corporation law are taxable under the act of 1892 (*Gen. Stat.*, p. 3337, § 260), with respect to the amount of capital stock issued and outstanding as a fixed factor, without regard to the purpose for which the capital stock was issued or whether issued for value or not.

2. Exemption from this measure of taxation is granted by the statute to manufacturing and mining corporations which have fifty per cent. of their capital stock invested in manufacturing or mining carried on within this state.

3. The burden of establishing such exemption is on the corporation claiming it.

4. So far as the capital stock of such a company is used to acquire the right to manufacture elsewhere, it is not invested in manufacturing carried on within this state.

On *certiorari.*

Argued at November Term, 1896, before Justices DEPUE, MAGIE and GUMMERE.

For the prosecutor, *George T. Werts.*

For the board of assessors, *John P. Stockton,* attorney-general.

The opinion of the court was delivered by

DEPUE, J. The Electric Storage Battery Company was organized as a corporation of this state by a certificate filed June 5th, 1888. The object of the incorporation was the manufacture of storage or secondary batteries for the storage of electricity for light and power purposes. The authorized capital of the company was originally $10,000,000, which was, in December, 1894, increased to $13,500,000. The entire capital stock of $13,500,000 has been issued and is outstanding, and on that amount a franchise or license tax of $4,425 was assessed by the state board of assessors for the year 1895, pursuant to the act of 1892. *Gen. Stat., p.* 3337, § 260.

After the company was organized it commenced business at Gloucester City, in this state, with a cash capital of twenty-five shares, representing $2,500 paid in. Shortly thereafter it became the purchaser from Gibbs and Payen of certain patents for the crystallization of metals and the manufacture of electrodes. As the consideration of this purchase, the

company issued to Gibbs and Payen its entire capital stock of $10,000,000, less the twenty-five shares held by the original corporators, thirty thousand shares being issued to Payen and sixty-nine thousand nine hundred and seventy-five to Gibbs. This purchase included patents issued to Payen in the United States, Great Britain and. Belgium, together with patents and all improvements thereon that might thereafter be issued to him directly or indirectly in other countries throughout the world. In 1894 the company became involved in a litigation with two other companies, over an alleged infringement of patents belonging to the two companies last referred to. This litigation was ended by the increase of the company's capital stock in the amount of $3,500,000, which was issued to the other two companies, for which the latter companies transferred their patents to this company.

The company continued its business exclusively at Gloucester until the fall of 1894, when it rented a building in the city of Philadelphia, and after that carried on business at both places. In both places the company occupied rented property. Its plant at Gloucester is estimated to have cost from $6,000 to $8,000. The Philadelphia plant is estimated at $10,000. In 1895, the year for which this tax was laid, the company had in its employ eight men at Gloucester and one hundred men in Philadelphia.

The contention is that the company is wholly exempt from taxation by force of the proviso in section 4 of the act of 1892. *Gen. Stat., p.* 3337, § 260. The product of the factory at Gloucester is the chloride of lead, which costs more than fifty per cent. of the entire cost of the manufactured and finished product.

There is also testimony that the patents owned by the company, the cost of which represents the greater part of its capital, relate to the process of manufacture at Gloucester, the raw material manufactured there being transferred to Philadelphia for the finishing touches and shipment. Hence the argument is that, adding the cost of the patents to the

cost of labor and materials in the business done at Glouces-
ter, more than fifty per cent. of the company's capital is
invested in the manufactory in this state. If the company
was a mere licensee, using the patent under a shop-right or a
local license from the owners of the patent, there would be
great force in this argument. But that is not this case. A
small part of its capital is invested in the process of manu-
facture. Nearly all of its capital stock issued and outstand-
ing was issued for the purchase of the patent rights, of which
the company became the owner. These patents were granted
by the United States, by Great Britain and Belgium, and the
agreement with Payen, the inventor, comprehends all patents
that might be issued to him for his invention throughout the
world. Corporations of the class to which this company
belongs are taxable with respect to the amount of capital stock
issued and outstanding as a fixed factor, without regard to
the purpose for which the capital stock was issued or whether
issued for value or not. *Storage Co.* v. *Assessors,* 27 *Vroom*
389. Exemption from this measure of taxation is granted
to manufacturing and mining corporations which have fifty
per cent. of their capital stock invested in manufacturing or
mining carried on within this state. The burden of estab-
lishing the exemption is on the prosecutor. So far as its
capital stock was used to acquire the right to manufacture
elsewhere, it was not invested in manufacturing carried on
within this state, and we have not been furnished with any
means of ascertaining how much of that investment may
fairly be considered as an investment in the business in this
state. *Edison Phonograph Co.* v. *Assessors,* 28 *Vroom* 520.

Allowance for this part of the capital stock being neces-
sary to bring the prosecutor within the exemption contained
in the statute, the assessment as made by the commissioners
is affirmed.